Okay, we will proceed to the next case, which is Steinberg v. Icelandic Provisions. Good morning. May it please the Court, George Grenade. Aha, you're back again. Back again, yes. George Grenade from RESA LLP on behalf of the plaintiff and the proposed class. This is another consumer protection class action involving a different product, a slightly different theory of deception. The product here is called Skier. It's produced by a company called Icelandic Provisions, and the claim is that the company represents this product as being from Iceland by prominently labeling it with the word Icelandic on the front of the packaging and by using imagery of a snowy landscape, again on the front of the word Icelandic. The truth of the matter is, as they reveal on the back of the packaging, the product is made in Batavia, New York, with domestic and imported ingredients. Counsel, let me ask you a question. Go ahead. Counsel, my question is, why would a reasonable consumer think that the word Icelandic on the label means that Skier on the label, or the snowy scene would mean all the products came from Iceland? That's a good question, Your Honor. That's, indeed, the heart of the matter, or one part of it. A significant part of the answer to that question is that the word Icelandic means of Iceland. If you look at the name of the company... But there are, you can come up with a hundred examples of, you know, Belgian waffles and Greek yogurt and French toast and English muffins and, you know, we can go on and on about things that are, have those names because they are thought to be, even though they're often not, in the style of that country or came from that country, and nobody thinks they were made there. Well, you gave a number of examples just then, and I think that... I can come up with another 15, probably, too. Right. And ultimately, what really matters is the product label. And so, without 15 product labels and 15 accompanying images and contexts and how large is the text, what... Is it bold? Is it... It also... There are numerous factors, right, when assessing a label. And so, it could be, I would submit, that a Greek yogurt might be mislabeled depending on exactly what the content of the label is. If there are other representations of the label that indicate it's from Greece, then in that case, consumers might believe it's from Greece. Just calling it Greek yogurt alone, without having a label to look at, is not enough to make the determination. So, it's the picture that you're relying on, or what? Yeah, it's the size of the word Icelandic. It's the fact that it says Icelandic provisions, which means food of Iceland. It's the fact that it says traditional Icelandic skier, which skier is traditionally made in Iceland. Indeed, this very company used to make this product in Iceland before they started making it in the United States. And it's also the landscape that they used to geography to sell this product. And one other factor that we don't allege, but I think just as a practical matter, is this is... Greek yogurt has become a household name in the American market, whereas I'm not so sure... But relatively recently. True. But so, I think, you know, our... Before that, it was Danish yogurt, right? And then it became just yogurt, and then it was a time lapse on this, and in two years, it won't be misleading? I wouldn't say that. I think that the... If you look at this label, they are emphasizing the geography of where the product is from. And we have supporting allegations for that as well. Namely, Icelandic skier that's from Iceland has unique characteristics. Authentic skier contains unique probiotics as a result of the dairy cows that produce the milk that is used for the raw material. The cows have grazed on the tundra. It contains certain roots and minerals that are not found anywhere other than in Iceland. And they don't require significant amounts of food, which mean that the milk in this product, if it's actually from Iceland, is different than the milk that's produced by American dairy cows. Is that in the complaint? It is in the complaint, yes. That's paragraphs 29 through 36 of the complaint. It's to ER, page 25. Because the word Icelandic and the imagery of the geography are deceptive here, Ebner versus Fresh is not on point. Defendant emphasizes that case, but that case did not involve a misrepresentation. The only representation in that case was about the net weight of the product, whereas here we have the word Icelandic, Icelandic provisions and the imagery of the geography. We also have supporting cases about similar geographic misrepresentations, Gavia versus Gruma, Hess versus Godiva, Rodriguez versus Olay Mexican Foods. These are all the same theory that we're presenting here. The company makes various representations about various versions of the word Icelandic and geography imagery on the packaging, and courts have held that the labeling is plausibly deceptive in these circumstances when the product is not, in fact, where it appears to be from. In what cases are you relying on for that as to geography? That's Gavia versus Gruma, Hess versus Godiva, Rodriguez versus Olay Mexican Foods. There's also one involving Asahi. Well, they make... District court cases? Are those district court cases? That's correct. These are district court decisions. In connection with whether the claim's plausible, I also want to talk about the district court's holding. The district court thought that the landscape was nonspecific, and that was part of I think the ruling. But that's not true, because if you look at the actual packaging, the landscape is right behind the word Icelandic. It's certainly at least plausible that consumers understand that the image of the countryside that's right behind the word Icelandic is referring to Iceland. Moreover, it has a little white fox, and white foxes are only in Arctic countries. You didn't say that. We don't allege that, but that isn't part of the packaging. I think it's a pretty simple claim, unless, Your Honor, any of you have any further questions. The defendant also wants to rely on the back of the label. Actually, I will talk about this for a moment, because I think this is a very incorrect argument, especially by the defendant. They want to say that the label is ambiguous, and therefore, the back of the label can correct the ambiguity. As in the last case, that's not the rule. The question is whether a reasonable consumer would be deceived. If a reasonable consumer is deceived by the front of the label, then the back label can't correct the problem, and the Bell v. Publix case has a wonderful discussion of that, which we cite in our reply brief. Bell was cited with an approval in Salazar v. Target by the California Appellate Court. So we ask that the court follow that here. Counsel, but if a reasonable consumer didn't look at the label and say someone would be deceived, but instead looked at it and said, well, to me, it looks ambiguous. I don't know if this snow is in the northeast United States or in Iceland or where it is. If they thought it was ambiguous, then do you have no claim? Again, I don't think ambiguity is the right inquiry. Ambiguity would imply that there are multiple meanings, and if there's a meaning that a consumer would take from the label that is deceptive, that's plausibly deceptive, that's enough to state a claim. Now, when you're saying ambiguity, if what you mean is that there are multiple possible meanings, but none of them are deceptive, well, that wouldn't state a claim. So the question is not so much whether there are multiple meanings available as whether at least one of the meanings would plausibly deceive a reasonable consumer. But this is a little different than the usual back-of-the-label case because the label here that's relevant was not the ingredient label, and it's not a little, small, teeny print, and it's not even on the back, I think. It's sort of adjacent to the front, just sort of on the side, and it's very large, and it says exactly what this is, right? I'm not sure I would agree that it's large. I mean, in the back, it says it was made in Batavia, but the explanation in New York, but the explanation, which is fairly large, seems fairly clear that it wasn't made in Iceland. Well, so the principle that we think that Korten Williams versus Gerber correctly articulated, or at least the underlying principle, they talked about the ingredient list, but the underlying principle is you can't, manufacturers cannot engage in a bait and switch. They can't tell and then later reveal it on the back end. So in this case, on the side of the packaging, ordinary consumers don't spend a lot of time parsing labels and analyzing labels, and they may not even look at the side or the back. They trust what's written on the front. And so I'm not sure that I, I don't believe that there's a material difference between origin labeling and ingredient list labeling in that regard. Okay. Do you want to save your time? Yes. Thank you. May it please the court, Steve Rosenbaum for the defendant. I would like to start with the example Your Honor used, which was Greek yogurt. I happened to go last night to the very store where the plaintiff bought his Iceland, his sample of my product and my client's product. There were for sale six products called Greek yogurt. They all used those words, Greek yogurt. How many of those were actually made in Greece? Well, the answer of course is zero. I mean, they were made in New Berlin, New York, Johnstown, New York, Londonbury, New Hampshire, Petaluma, California, and Seattle, Washington. Did it say Greek products on it, or Greek provisions, and did it have a picture of Greece? Your Honor, the term Greek yogurt is surely as strong as traditional Icelandic skier. I know, but he's relying on more than that. He's relying on the very large word, Icelandic provisions, in addition to traditional Icelandic skier. Then he's relying on the drawing, which most people would think is Iceland. I would think is Iceland. As I noted, it has a little white fox that was not found almost except in Arctic areas, and a little house, which looks like an Icelandic house. The notion that this is, and it has a mountain with a lot of ice on it, so it certainly looks fairly Icelandic. Well, Your Honor, it has a picture of a cow, which is a black and white Holstein cow, which is American milk cows, or 90 percent Holstein cows. I think it's a idealized picture perhaps of a barn, which is no more representative, just a representative of the concept of a barn. Not a barn, it's a house. It actually is an Icelandic house. But Your Honor, I would go on to say that as Your Honor was pointing out, there is very explicit descriptions here of the nature of this product. These things, by the way, go well beyond anything that would apply to the Greek yogurts, none of which, as best I can tell, have any association with Greece, other than that it's a style. Here, what the district court judge called the core element of the product, which is an accurate statement, which is the cultures, that's what gives the flavor to the product, that's what creates, changes the milk into skier, is Icelandic heirloom skier cultures. These are cultures from Iceland. These were cultures that were developed from the largest dairy farmer-owned dairy in Iceland. You know, it's interesting because you just used the term Icelandic and the label also used the Iceland. Well, it could, but the dictionary definition... But it does, in that phrase, and as you just used it, Icelandic heirloom skier cultures means from Iceland. Otherwise, it would be a meaningless statement. It doesn't mean, I assume it doesn't mean, that Icelandic heirloom skier cultures didn't originally come from Iceland. It can be characteristic. It can mean characteristic of. So it doesn't mean that. So the notion that there's something in here that actually came from Iceland isn't necessarily true. No. Well, no, I disagree with that, Your Honor. It says made with original skier cultures, and it says explicitly, the only skier available in the United States that contains Icelandic heirloom skier cultures. Right. So if Icelandic doesn't mean it came from Iceland, then it can just mean in the style of Iceland skier cultures. I think when you call it an heirloom skier culture, you're suggesting that this is... I mean, an heirloom typically means something that's been in existence for some period of time, and then when you go on to say this was developed with the oldest farmer-owned dairy in Iceland, I think it's clearly explicit, I think, actually, that that component of the product comes from Iceland. And I say this is reinforcing of the fact that this is a product that not only is in the style of skier, which is the most, you could say, for the products that are labeled as Greek yogurt, but that this also was developed in conjunction with the dairies in Iceland, and that the cultures themselves... Well, I do think you're trying to have it both ways. And, Your Honor, so we support the district court's conclusion that there was nothing... that the representations made in the front are all accurate, but of course, the court went on to conclude, and this is consistent with this court's description of the relevant standard in the cases that Your Honor was describing previously in the earlier argument, that if there is... This is, of course, the Moore case, where the court said that one can look to the back label if there is any ambiguity created. They don't use the word ambiguity, but that is the implication that this court used. And of course, as Your Honor has pointed out, this is a product that has a very clear statement as to where the product was made. Namely, it's made in Batavia, New York. And so, clearly, the front label, if there were ambiguity, is resolved by the explicit back disclosure. And as Your Honor's pointed out, this is not an ingredient list where you have to work your way through 12 or 15 ingredients to figure out what's in a product. This is a separate statement, absolutely straightforward, on the back of the product that states where the product is made. And so, under Moore, qualifiers and packaging, usually on the back of a label or an ingredients list, can ameliorate any tendency of the label to mislead. If there were a tendency of this label to mislead, which is not something we agree that exists, but if it did, then the application of legal principle would, in our estimation, dictate that the claims asserted here be rejected. What about the website that's in the complaint that says, hello from Iceland, and another photo that certainly seems to be from Iceland and talks about on location in the coastal village of Vik, et cetera? And as we pointed out, Your Honor, the plaintiff has, having introduced the web page as part of the complaint, obviously the rest of that web page is fair game for us to point to. And on the home page, I'm not talking about some page you get too buried as you search through. On the home page, at the top of the home page, is the words, quote, it's the only skier made in the United States, et cetera, et cetera. That's how the website begins. So, there is no basis to point to that website and say that it has created confusion as to the origin. To the contrary, it is as explicit as it can be. And as I say, it is not buried, not in small print. It's at the top of the home page. The cases that have found geographic misrepresentations have involved facts far different than our own. And these were addressed more or less one by one by the District Court. They included such cases as Broomfield, where there was a map of Hawaii and a location marked of the brewery and said, we invite you to visit our brewery whenever you're in Hawaii. But actually, the beer wasn't brewed in Hawaii at all. Now that is a geographic misrepresentation. But here, as stated, this is a description of a product skier. It is a kind of yogurt that is made in a particular way that originated in Iceland. That methodology is methodology followed by my client in making its product. Similar to how entities that label their product as Greek yogurt use what is perceived to be a method developed originally in Greece for making those products. What about whether the plaintiff should have leave to amend? If they did have leave to amend, presumably they could do one of these consumer surveys and see what people actually think. Well, Your Honor, I think if they had, I mean, in the Becerra case, of course, this court rejected the reliance upon surveys. Well, I just reread Becerra and it rejected it because of the particular details of that survey, but not in general. I mean, it doesn't make any sense to say if the question is what a reasonable survey, a reasonable consumer would think, and you ask a bunch of questions. Your Honor, I don't think that every false labeling case is allowed to go forward merely because a plaintiff goes out and commissions a survey. Tell me why. Because I think that the Supreme Court in Igbal and Twombly said that courts are to apply judicial experience and common sense in resolving whether or not a claim is sufficient to go forward, and I think there are dozens and dozens. As Your Honor, I'm sure well knows, there have been hundreds of food labeling cases filed in the last few years against a variety of products. The courts have addressed those and in a large majority of cases found the allegations insufficient. In some of those cases, there have been surveys. Well, we've also said in some of the opinions that these cases should ordinarily go to juries because it's a question of what a reasonable consumer would think, and that's a jury question. And if a court applied And if you have a survey that suggests that a reasonable consumer does think this, then why wouldn't that? I mean, in the other case, there's a different problem than what was just argued before because the question is, what do they, is that inconsistent with the label? Because one can say, well, the label doesn't really disagree with what the reasonable consumer thinks. But here, if we ask people whether they think it came from Iceland and they say, yes, they do, that would tell you something about what a reasonable consumer thinks. No, unless they're all unreasonable. Well, Your Honor, first of all, to state the obvious, if plaintiffs had wanted to bring a survey, they could have. They didn't. I don't think we should be burdened with going through another round of litigation because they skip. Well, except our general case laws that ordinarily there's an opportunity to amend. If they ask for an opportunity, and they don't even have to ask for one, but did they ask for one? I'm not aware that they did, Your Honor, but I can't state that with absolute certainty. Counselor, is it your position that our panel could say that as a matter of law, a reasonable consumer could not find the label deceptive? Yes, Your Honor. I mean, and we have, and there have been, we cite in our brief the dozens of cases where courts have reached those conclusions with respect to a wide variety of product labels. And that, in fact, is the most common fate of these cases over the last few years. But yes, it is our view that it's an objective standard as to whether or not the reasonable consumer would, you know, whether, I mean, to use the exact phraseology, that there's a probability that a significant portion of the general consuming public would be misled. That's Ebner case, the Ninth Circuit Ebner case. And our view, as in Ebner and as in, you know, this court in Chong, you know, faced a claim that a label that showed a, had a drawing of a mountain and was called Arrowhead brand, whether that suggested that the bottle, that the water there came from the Arrowhead Mountain or at least the Arrowhead Springs when, in fact, it came from many different sources. This court affirmed the ruling below, that as a matter of law, this was not misleading. And we're asking for an, you know, Ebner, the same result. And so we're asking for the similar, the same result here. That a consumer, that a consumer at, when what we're, what we're seeking a ruling on is that at worst, and we don't concede it, but at worst, a consumer would find the front label ambiguous, ambiguous, and that would trigger the Ninth Circuit's rule that says if there's ambiguity in the front label, that can be eliminated if there's a sufficient disclosure on the back label. And here there is an absolutely explicit disclosure on the back label as the geographic origin of the product. So yes, we believe as a matter of law, this court can and should affirm. Thank you. Okay. Thank you very much. You have some time for a battle, sir. Thank you. I just have a couple of points, unless the court has any questions. One, defense counsel started his argument talking about Greek yogurt. I just want to point out that Greek yogurt is not an issue in this case. I think we have to look at the label that's actually at issue here, the representations that are made there. And then the second point I have is I wanted to briefly mention the website. The reason the website is alleged in the complaint is to get an idea of the atmosphere or the flavor of the defendant's marketing. The website shows that they are trying to cash in on the notion that this product is from Iceland. It says, hello, from Iceland. And there's also discussion of videos that were created that are also trying to cash in on the fact that the product is from Iceland. That marketing campaign is carried over onto the product label itself. And so the defense counsel is correct that it also does say on the website that the product is made in the United States. However, the website is not our focus here. The product label is what we're really suing about. Actually, I have a third point. We didn't request below leave to amend, but if this court would be willing to grant it, we would request leave to amend to conduct a consumer survey. And do you give us any clues to what you might amend? What you might mend it with? Well, we have not yet conducted a consumer survey, but we would be willing to go and conduct one and see what the results are and amend to allege the results of that survey in the event that they support our claim, which we believe it would. That's sort of an after-the-fact thing. You'd think if you were going to file the complaint, you'd do it first. Correct. But as Your Honor mentioned a moment ago, we don't even have to request leave to amend to be granted it. In the other case, the survey was done after the original complaint. Is that right? Well, there was a survey in the original complaint, and then we did a second survey with the amended complaint, and we attached the new survey. I see. The second survey asked some additional questions that were not included in the first survey. I see. Okay. Anything else? That's all. Any questions? All right. Thank you very much. The case of Steinberg v. Icelandic Provisions, Inc. is submitted, and we'll go to the last case.
judges: GOULD, BERZON, IKUTA